BURNHAM et al. v. UNION MFG. CO. et al.

(Circuit Court of Appeals, Sixth Circuit. July 2, 1901.)

No. 938.

PATENTS—VALIDITY AND INFRINGEMENT—CRANK HANGERS FOR BICYCLES.

In the Burnham & Alsup patent, No. 550,587, for an improvement in crank hangers for bicycles, claims 1 and 2 cover only combinations of old devices, which perform no new functions, and accomplish no new results, and such claims are therefore void for lack of invention. Claim 4, however, the essential feature of which is the placing of the ball-bearing cones in the hollow hubs in the same plane as the cranks, thus securing the greatest possible distance between the bearings without increasing the width of the tread, embodies a new and useful improvement, and discloses patentable invention. Such claim, however, *held* not infringed.

Appeal from the Circuit Court of the United States for the Northern District of Ohio.

Charles M. Peck, for appellants.

Almon Hall, for appellees.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

DAY, Circuit Judge. This case involves a patent relating to an improvement in crank hangers in bicycles, and is covered by letters patent No. 550,587, issued to Franklin P. Burnham and Jefferson D. Alsup. The inventors state that the improvement has for its object to procure an improved crank hanger, which will allow the maximum distance between bearings with a minimum tread in any given machine. A description of the invention, reference being had to the accompanying drawings, is as follows:

"Fig. 1 is a longitudinal section of the hanger, showing the several parts in their relative positions. Fig. 2 is a cross section on line 2, 2, of Fig. 1. Fig. 3 is an end view of the crank hub. Like letters of reference refer to like parts throughout the several figures. The crank-shaft sleeve, A, to which the frame of the bicycle is connected, is constructed as in ordinary bicycles, and is provided at the ends with the inside cones, $A^1$, $A^1$. The cranks, B, B, are provided with the hollow hubs, $B^1$, $B^1$, which contain the outside cones, $B^2$, $B^2$, and which are preferably integral with said cranks. Connected with the crank hubs, $B^1$, $B^1$, and preferably integral therewith, are the inwardly projecting portions, $B^3$, and $B^4$, which are provided with the teeth C and D, adapted to interlock, and connect the two portions together. The balls, $B^5$, $B^5$, work between the cones, $A^1$, and $B^2$. A bolt or rod, E, passes through the hubs, $B^1$, $B^1$, and is held in place by the head, $E^1$, and nut, $E^2$. The bearings may be adjusted by means of the nut, $E^2$. In order to strengthen the connection between the projecting portions, $B^3$, $B^4$, of the hubs, $B^1$, $B^1$, we use a sleeve, F, which surrounds said projecting portions, and which is provided with the keys, $F^1$, $F^1$, adapted to fit into keyways on said portions, $B^3$, $B^4$. By this construction the torsional strength of the crank connection is greatly increased. It is evident that the teeth, C and D, may be dispensed with when the sleeve, F, is used, and that, when said teeth are used, the sleeve may be omitted; but we prefer to use both the teeth and the sleeve, as shown. The sprocket wheel, G, is fastened in any convenient manner to the flange, $B^6$, on the hub, $B^1$, as by means of the screws, $G^1$, $G^1$."

(No Model.)

F. P. BURNHAM & J. D. ALSUP.

CRANK HANGER FOR BICYCLES.

No. 550,587.    Patented Dec. 3, 1895.

*Fig. 1*

*Fig. 2*

*Fig. 3,*

Witnesses

E. T. Wray.

J. H. Boulton

Inventors.

Franklin P. Burnham

Jefferson D. Alsup

by Lewis W. Baker

their Att'y.

The patentees add:

"It will be seen we have here a simple, cheap, and light construction by which we secure the maximum width between the bearings, and hence a narrow-tread bicycle is secured without the disadvantages attending the narrowing of the tread in bicycles as ordinarily constructed, such as injury to the bearing and the like. We have described these several parts in detail, but it is evident that they may be varied somewhat in form and construction without departing from our invention, and we therefore do not wish to be limited to the exact construction shown."

The claims alleged to be infringed—Nos. 1, 2, and 4—are as follows:

"(1) The combination, in a bicycle hanger, of a crank shaft, a sleeve surrounding said crank shaft, and provided at each end with a ball-bearing cone; cranks provided with hollow hubs containing ball-bearing cones, and adapted to receive the ends of the crank-shaft sleeve; and a series of balls contained within said hollow crank hubs, and adapted to bear against said bearing cones, substantially as described.

"(2) A bicycle comprising cranks having hollow or recessed hubs integral therewith, and adapted to receive the bearing balls, each hub being provided with an inwardly projecting portion connected rigidly thereto, said inwardly projecting portions connected so as to rotate together, and a sleeve surrounding said inwardly projecting portions, and provided with a bearing surface for said bearing balls."

"(4) A bicycle comprising hollow or recessed hubs having cranks connected thereto, said hubs provided with ball-bearing cones in the same plane as the cranks, and being rigidly connected so as to rotate together; a non-rotatable sleeve associated with said hubs, and provided with ball-bearing cones opposed to the cones in the recessed hubs, and adapted to bear against said bearing cones."

A consideration of the testimony in this case, as well as the construction of the modern bicycle, indicates the desirability of maintaining as narrow a tread—being the distance between pedals—as is practicable. It is obvious that, the more narrow in construction the tread can be made, the better the operation of the machine, because the power can thus be more directly transmitted. It is also obvious that, the wider the distance between the bearings, the greater will be the resistance to strain, because of the increased rigidity of the mechanism. The problem to be solved in making a successful machine seems to be to combine narrowness of tread with the greatest practicable distance between the bearings. This the inventors of the mechanism disclosed by the letters patent in controversy claim to have accomplished in a manner superior to anything theretofore known, and in such wise as to make their invention a valuable and substantial advance in the solution of the problem. The learned counsel for the appellant states the gist of the complainants' patent to be "the placing of the ball bearing within the hubs of the crank hangers, whereby extreme narrowness of tread is secured, and in placing a driving sprocket wheel between the centers of the ball bearings, whereby torsional strain is prevented." The patent under consideration is a combination patent, and it is admitted that all its elements are old. As was said by

the leading expert called for the appellant, "Crank bearings were old, and so are crank shafts and divided and coupled crank shafts, and so were cranks, and so were cranks with hollow hubs, and so were ball bearings." What is claimed for complainants' patent is that it has produced for the first time a combination which, preserving narrowness of tread, has not correspondingly narrowed the distance between the ball bearings. Taking this statement as to the object and purpose of the complainants' patent, and we find that the central ideas therein of placing the ball bearings within the hubs of the crank arms and the driving sprocket wheel between the centers of the ball bearings are not original with the invention disclosed in the letters patent under consideration. In this connection we may remark that, while the location of the sprocket wheel within the planes of the ball bearings is not made a part of any of the claims of the complainants' patent, nevertheless, in the structure shown in the drawing and described in the specifications, having in view the purpose to be accomplished, it is necessary to locate the sprocket wheel within the planes of the bearings. Looking now to what has been accomplished before, we find in the patents set forth in defendants' answer that the hollowing of the hub to receive ball bearings had been frequently undertaken. Other inventors had in mind the advantage of placing the chain pull between the bearings. Grubb, whose patent was applied for before the patent in suit (letters patent No. 555,281, to William I. Grubb), speaks of bringing the strain upon the sprocket wheel between the plane of the bearing, and again says:

"By means of my construction I am enabled to spread the plane of the adjacent ball bearing out to or beyond the plane passing through the center of the sprocket teeth, and thus avoiding any overhanging strain."

Recessed ball bearings are shown as early as 1888 in the English patent to Boothroyd, No. 8,396 of 1888. In this patent there are shown two hubs having recessed ball bearings at the extremities of the shafts, with the sprocket wheel between the bearings. It is true, the Boothroyd patent is not for a crank hanger, and the attachment described was made to the rear sprocket wheel instead of the front sprocket wheel. But the desirability of keeping the bearings as far apart as possible by means of recessed hubs, inside of which the bearings may operate, is fully indicated. In the patent to Alfred H. Bishop, No. 521,363, which antedates the complainants' invention, we have a crank with a hollow hub to receive the ball bearings, thereby obtaining increased distance between the bearings, without widening the tread. The accompanying drawing indicates the Bishop invention:

(No Model.)

## A. H. BISHOP.
### BICYCLE.

No. 521,363.                         Patented June 12, 1894.

Fig.1.

Fig.2.

Fig3

Fig.5.

Fig 4.

Witnesses
C. L. Bradford
Curtis Lamme

A. H. Bishop
Inventor:

By MerwLiere Atty.

110 F.—49

Of his invention Bishop says:

"My invention has for its object to securely connect the sprocket wheel with the crank or drive shaft in a simple and efficient manner, and so as to secure protection of the ball bearings from dust and dirt, and to bring the said bearing outwardly to or beyond the chain line, as will be hereinafter explained."

Bishop shows in his drawing, at the right hand thereof, a recessed hub, the recess not carried so far into the hub as is shown in complainant's structure, the latter carrying the recessed hub to a point within the vertical plane of the crank arm. Bishop shows, however, a recessed hub carrying the ball bearings further apart, and, if necessary, beyond the plane of the sprocket wheel. Of this construction Bishop further says:

"By the construction and arrangement described, the sprocket wheel is enabled to assume a position over the ball race, and it, together with the hollow boss of the crank, fully protects the ball race from dust and dirt, and enables the ball bearings to be extended outside of the chain line; thus making the whole much more rigid than the ordinary form of yokes. This construction, as will be understood, enables the manufacturer or rider, or any inexperienced person, to readily change the gears of a machine to suit all conditions of riding."

A divided, hollow crank shaft, consisting of two members projecting inwardly from the respective crank hubs and parts of the shaft interlocking so as to compel them to rotate together, is also old in the bicycle art, and is shown in the patent to Latta, No. 301,245, issued July, 1884. What, then, have Burnham and Alsup, in the patent in question, accomplished beyond what is shown in the prior art? They have placed hollow crank hubs, within which ball bearings are located, at both ends of the crank shaft, and located the bearings further within the hub, extending the sleeve of the crank shaft within the same, so as to locate the bearings in the plane of the crank arm; thus carrying out the idea of locating the bearings as far apart as possible without widening the tread. The sprocket wheel, in this construction, is necessarily located within the planes of the crank arms. An examination of claims 1 and 2 in view of prior inventions discloses only an assembling of old elements, performing the old functions in substantially the old way, except that a hollow or recessed hub adapted to receive the bearing balls is found at both ends of the crank shaft, instead of at one end. In the light of the prior art, therefore, these two claims, so far as the combinations have anything new, are the result of duplicating the hollow hub shown in the Bishop patent at one end of the shaft by placing it at the other end also. Mere duplication of parts is not invention. It is true that the assembling of old elements having a new mode of operation producing a more beneficial result does amount to invention. In claims 1 and 2 we find no new mode of operation producing more beneficial results. It is also well settled that there is no invention in merely selecting and putting together parts of different machines in the same art, where each operates in the same way in a new machine producing the same result. The cases holding this doctrine are cited

in Overweight Counterbalance Elevator Co. v. Henry Vogt Mach. Co., 43 C. C. A. 80, 102 Fed. 957.

In the fourth claim the patentees in complainant's patent have embodied the element which provides that the ball-bearing cones shall be in the same plane as the crank arms, and the whole combination, by thus carrying the ball bearings into the same plane with the crank arms, permits the widest possible space between the bearings without widening the tread, and of necessity locates the sprocket wheel within the planes of the bearings. The power applied through the crank arms bears directly upon the ball bearings. This combination seems to effect the desired result, having the greatest possible distance between the bearings consistent with narrowness of tread. This appears to us a distinct advance on what was theretofore shown by Bishop and others in the fact that the ball bearings are placed within the plane of the crank arms in a recessed hub. While a mechanic skilled in the art, with Bishop's and other inventions before him, might place the hollow recessed hubs at both ends of the shaft by simply duplicating Bishop's arrangement, when you add to that the further extension of the ball bearings beyond the plane of the sprocket wheel into a recessed hub in the plane of the crank arms, thereby further widening the distance between bearings while retaining the narrowness of tread, we are not prepared to say that the inventor has not crossed the line which separates the mere assembling of old elements from that degree of invention that consists in putting such elements into such relation that, acting together, they produce a different and more beneficial mode of operation. In view of the testimony in the case, uncontradicted in the record, as to the advantages of the crank hanger thus constructed in practical operation, we think the fourth claim discloses patentable invention. While this is true, the suggestiveness of former inventions, and the short step in advance taken by the patentees, require strict construction of the claim. Are all of the essential elements of this claim found in the defendants' crank hanger? Examining the crank hub upon the right of the shaft as shown in defendants' device, we find it constructed more nearly in accordance with the Bishop hub and crank arm than the complainants'. The sprocket wheel is attached directly to the hub, practically in the plane of the ball bearing, or possibly slightly within the same, as is shown in Bishop's construction. It lacks the element made essential in the fourth claim (in our view, necessary to support the patent) of extending the ball bearings to the plane of the crank arm. In this view of the case, although we think the patent valid for a mechanism constructed as shown and covered by the fourth claim of the patent, we do not think the defendants' mechanism infringes that claim for the reasons stated. We therefore reach the same conclusion as to the liability of the defendants as was arrived at in the circuit court. The decree dismissing the bill is therefore affirmed; costs in this court to be divided.