AMERICAN CARRIAGE CO. v. WYETH.

(Circuit Court of Appeals, Sixth Circuit. July 20, 1905.)

No. 1,419.

1. PATENTS—ANTICIPATION.

The effect of a device as an anticipation is not altered by the fact that it was made to serve a purpose additional to that for which it was used in the second case, where, so far as the latter goes, the two are equivalents.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, § 89.]

2. SAME—SLEIGH RUNNERS.

The Wyeth patent, No. 400,381, for a sleigh runner for wheeled vehicles, claim 12, the essential feature of which is the use of side plates of iron or steel to fasten the rave and knees together, instead of making a mortise and tenon connection, is void for anticipation and lack of patentable invention.

Appeal from the Circuit Court of the United States for the Western District of Michigan.

Wm. G. Howard, for appellant.

H. L. Dodson and A. C. Denison, for appellee.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. Claiming as assignee the rights secured by letters patent Nos. 400,381, granted to David G. Wyeth March 26, 1898, and 444,405, to the same grantee, the complainant (now appellee) filed this bill complaining of infringement, and praying for an injunction and for an accounting for profits and damages. Upon the bill and several affidavits filed therewith he moved for a preliminary injunction. The defendant answered, and filed opposing affidavits, and the complainant filed affidavits in reply. Upon the hearing of the motion the court sustained the motion, and granted an injunction, but only in respect to the twelfth claim of patent No. 400,381. This appeal therefore presents only the merits of that claim and the question of the infringement of it.

The bill is in the usual form of such bills, and the answer presents the common defenses of want of novelty, anticipation, and non-infringement.

This patent relates to the construction of sleigh runners for wheeled vehicles when the wheels are removed, and is for alleged improvements in such construction. A part of Fig. 1 is here reproduced to show the members of the combination of claim 12, which reads as follows:

"The combination, in a sleigh runner for wheeled vehicles, of two side plates, pp, each having four flanges, f, with unmortised and untenoned knees and rave, kk and r, substantially as set forth."

The claim can be all comprehended from this drawing if we add' Fig. 12 to show the inside of the plate and its flanges, which we do.

The two white spaces, f, in Fig. 1, show those two flanges, and all are shown by the same letter in Fig. 12. The rave, and the knees, kk (sometimes called posts), are old and well-known members of sleigh runners, if we except the characteristic that the rave and knees of the patent are not mortised together, but the rave rests on top of the knees. Such novelty as there is must therefore be found in the employment of the plate with flanges and dispensing with the mortised connection of the knees with the raves. But each of these devices was old, and had already been employed in patents relating to this identical subject. Thus a patent issued to Wright July 10, 1883, showed a side plate bolted to the side of the rave and extending down the side of each knee and bolted thereto. The middle part of the plate was carried above the rave to serve another purpose, but the plate was integral, and served the same purposes as in Wyeth's; that is, it held the knees in fixed contact

with the rave, prevented the spreading of the knees from each other at the foot, and prevented the lateral displacement of the lower part of the knees. One of each such plates was put on the inside and another outside, as in Wyeth's, except that on one side the plate extended quite down the length of the knee, while on the other side it extended only part way down, whereas in Wyeth's patent the plates on both sides extend only part way down. The fact that an additional purpose above mentioned was accommodated by Wright does not affect its equivalency with Wyeth's device to the extent which the latter goes. Dowagiac Mfg. Co. v. Brennan & Co. (C. C. A.) 127 Fed. 143, 148. And certainly, if it was not desired to carry the plate higher than the rave for another purpose, there would be no invention in bringing it down and carrying it alongside the rave.

We do not, however, mean to imply that the mere attachment of a metallic plate to a wooden structure for the purpose of strengthening the parts or holding them in the desired position or relation to each other would have any quality of invention about it. Such devices are old, and within the common knowledge of everybody. But it is claimed that adding flanges to these plates was a new thought, and contributes greatly to the utility of the invention. We have no doubt of its utility, but it was not a new idea. It is matter of common knowledge, and must be known to even ordinary workmen in iron and other metals, that a metallic plate bent lengthwise to an angle is stiffer and stronger to withstand lateral pressure than the flat plate. So no one can be surprised to find that in this art, as well as others, such forms have been used. Several previous patents show flanged plates used to strengthen wooden parts in vehicles and other structures. We need only refer to the Wright patent, already mentioned. The patentee in describing the plates (he calls them "bars") which re-enforce the posts says, "Said bars are further provided with side flanges, j, j, that overlap the corner of the posts, and serve to strengthen the same and assist in keeping the posts in their proper position." In some of the constructions shown by this and former patents the angle made to the flange is not so much as a right angle, but that is a mere matter of degree, of extent, or size. Smith v. Nichols, 21 Wall. 112, 22 L. Ed. 566; Galvin v. City of Grand Rapids, 115 Fed. 511, 53 C. C. A. 165; Eames v. Worcester Pol. Inst., 123 Fed. 67, 60 C. C. A. 37.

So in regard to the omission of mortise and tenon to connect the rave and posts, several patents are shown in which in sleighs and other vehicles this was done; and in a patent granted to Westervelt November 29, 1881, No. 250,314, the patentee states that it is the object of his invention "to construct a sleigh in such manner that greater strength shall be secured to the several parts than is possible when the timbers are mortised, and at the same time repairs shall be easily and cheaply made." And accordingly his specifications require that mortises and tenons shall not be used. Thus it is evident that nothing whatever of the combination of the twelfth claim was new, and it is a plain case for the application of the rule stated in our opinions in Burnham v. Union Mfg. Co., 110 Fed. 765,

770, 49 C. C. A. 163, and Dowagiac Mfg. Co. v. Superior Drill Co., 115 Fed. 886, 901, 53 C. C. A. 36, that, in the language of Mr. Justice Day in the former case, "it is well settled that there is no invention in merely selecting and putting together parts of different machines in the same art when each operates in the same way in a new machine producing the same result." This was said of machines, but the rule is equally applicable to a product where the reason for it is the same.

It appears that the complainant obtained an assignment of the Wright patent, and has been manufacturing its goods upon the lines of that patent, rather than its own. We apprehend the Circuit Court fell into an error in relying upon the acquiescence of the public in the validity of the patent in suit as the ground on which to grant the injunction. Inasmuch as the complainant owned and used the Wright patent, it would seem that the acquiescence may have been in deference to the Wright patent, rather than to Wyeth's. The Wright patent had stronger claims for recognition than the other, and we think it very unsafe to rely upon the public acquiescence shown by this record as evidence supporting the patentability of the Wyeth alleged invention. Besides all this, the supposed infringing structure of the defendant appears to be substantially that of the Wright patent, which expired in July, 1900; and it is curious to note that the complainant now charges infringement against substantially the same thing as in another moment he claims was not an anticipation. But it should be added that public acquiescence, though sometimes, in doubtful cases, a matter for consideration, is not available to maintain a patent palpably invalid.

We are urged by the appellant to direct the dismissal of the bill if we reach the conclusion above indicated. But the objection to that course is that the claim brought under examination on the present appeal is only one of many. It may be that other claims may stand on better ground. They have not been discussed, nor has it been necessary for us to consider them. In these circumstances it would be dangerous to order the general dismissal of the bill. But the other patent, No. 444,405, contains but a single claim, and that is in substance the same as the twelfth claim of the former patent, with the addition of a similar connection of the knees with the runner as that between the knees and the rave—a duplication of the same device, as to which see L. Schreiber & Sons v. Grimm, 43 U. S. App. 10, 17, 72 Fed. 671, 673, 19 C. C. A. 67; Dunbar v. Myers, 94 U. S. 187, 24 L. Ed. 34. If it should finally appear that the conditions are as they now appear, no doubt our opinion will furnish a guide for the disposition of both the claims herein specially referred to. We are clearly of opinion that there was error in granting the injunction, and that the order should be reversed.

It is so ordered.