## McCASKEY REGISTER CO. v. MANTZ.

### (District Court, N. D. New York. October 31, 1914.)

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—ACCOUNT-RECORDING APPLIANCES.

   The McCaskey patent, No. 783,126, for account-recording appliances, discloses patentable novelty and invention, and is valid, but, in view of the prior art, is of very narrow scope, and with a narrow range of equivalents; as so construed, *held* not infringed.

2. PATENTS (§ 22*)—PATENTABILITY—"EQUIVALENT"—"SUBSTITUTE."

   An "equivalent," in patent law, is not the same as a "substitute."

   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 24; Dec. Dig. § 22.*

   For other definitions, see Words and Phrases, First and Second Series, Equivalent.]

In Equity. Suit by the McCaskey Register Company against George L. Mantz for infringement of letters patent No. 783,126, for account-recording appliances, granted February 21, 1905, to Perry A. McCaskey. On final hearing. Decree for defendant.

Chas. B. Mason, of Utica, N. Y., Edw. R. Alexander, of Washington, D. C., and Harry Frease, of Canton, Ohio, for complainant.
Miner G. Norton, of Cleveland, Ohio, for defendant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

RAY, District Judge. The patent in suit, No. 783,126, to Perry A. McCaskey, relates to systems for keeping records of credit sales of merchandise and also the cash payments thereon, and was granted February 21, 1905, on application filed April 27, 1904. It has novelty and new features and great utility. Claims 12, 13, 15, and 22 are in issue here. Claims 2, 13, 15, and 22 have been the subject of former litigation in McCaskey Register Co. v. Divens (C. C.) 181 Fed. 171, affirmed 194 Fed. 967, 114 C. C. A. 603. It was held at circuit that the claims in issue there "must be limited to the new and *precise* devices as shown in the drawings and specification." The Circuit Court of Appeals (Third Circuit) on this subject said:

"From what has been said, it is obvious that the patent is a very narrow one, and that, if it is sustained, it must be narrowly construed, and practically confined to its exact disclosures. No broad construction is permissible, nor can the doctrine of equivalents be applied, without encountering the prior art and destroying the patent. Thus construed, the defendant has not infringed."

[1] It is seen that the validity of the patent and of the claims in issue, the same as here with one exception, were conceded by the Circuit Court of Appeals. There can be no serious question on this subject, and this court also finds the patent and all the claims in issue here valid. The real question is that of infringement, which incidentally, of course, involves that of construction. This art is in no sense a very old one, and it is far from crowded, so far as this record shows. Bill files and bill holders and receptacles for storing and preserving papers are, of course, very old; but they are not really of the prior art we are considering and to which the McCaskey patent in suit belongs. · In patent of October 10, 1899, to Yorger and West for "store cabinet for sales accounts," it is said:

"Our invention relates to devices for the use of merchants for facilitating and simplifying business transactions connected with the selling of goods on a credit system; and it consists in a convenient cabinet, embodying new and novel elements in the construction thereof, whereby billing-forms are retained and on which the names of purchasers are entered in alphabetical order, together with the entries of their purchases at the moment of making the sale, and whereby the bill of any purchaser may be instantly referred to for making subsequent charges, or for summing up and rendering statement of account.

"Our invention consists, further, in the parts and combination and arrangement of parts embraced in the details of construction, as will be hereinafter described, and pointed out in the claims. In conducting a retail store, much detail work is required, with great possibilities of errors, in keeping the accounts of those to whom credit is given, entailing considerable expense in the keeping of account books, usually involving the multiplication of entries, all of which is a serious loss to the merchant, particularly in cases where the entries of sales may be inadvertently omitted in crowded hours.

"Our object is to provide a simple and convenient means whereby the ordinary billing-forms may be substituted for the usual system of books in making sales entries and rendering the transferring of accounts from book to book unnecessary, so that the original entries stand until liquidated. A further object is to provide equally convenient receptacles wherein the bills, as the sheets become filled up and accumulate, may be placed so as to be readily accessible when rendering accounts for settlement. These objects are fully attained in our invention, which is, furthermore, of utility in being portable, so that the accounts may be transferred, when desired, to a safe, and it is cheaply manufactured and durable and economical in use."

This was followed in November, 1900, by a patent to Braddock, No. 661,710, and patent to Huber, No. 708,230, in 1902, and this by a patent to McCaskey, No. 717,247, applied for September 19, 1902, and issued December 30, 1902, and that was followed by the patent in suit, and is, of course an improvement on his former device. Probably McCaskey's patent of 1902 taught him something, but it was his own invention. Whatever instruction it gave was from himself. It was, of course, in the prior art when he made his discovery and invention of 1904, the patent in suit. He could not have two patents for the same thing, but could have a later patent for an improvement, or for something discovered or invented in 1902, but not patented until 1904, provided it was not disclosed and abandoned to the public.

A mere reading of the claims and specification of the two McCaskey patents show clearly that the second is an advance on and an improvement over the first, and its patentability is presumed until the contrary is proved. The last is better than the first, and those who copy it and the improved features may be assumed to do so for the reason they, too, see some advantage in so doing, some advance over that which has gone before.

The claims in issue read as follows:

"12. Account-recording appliances, including a bill-holder frame, bill-holders mounted on the frame and having pairs of apertures therein, bill-clamps mounted oppositely on both sides of the bill-holders and having members extending through the apertures to opposite sides thereof, the bill-clamps on both sides of the bill-holders extending from the apertures in the same direction.

"13. Account-recording appliances, including pivoted bill-holders, bill-clamps mounted on the bill-holders, tab-holders attached to the bill-clamps near the free ends thereof, and index-tabs mounted on the tab-holders.

  *    *    *    *    *    *    *    *    *

"15. Account-recording appliances, including a bill-holder frame, bill-holders mounted on the frame and having pairs of apertures therein, bill-clamps mounted oppositely on both sides of the bill-holders and having members extending through the apertures to opposite sides thereof, and rubbing-strips on the bill-holders in pairs on opposing holders and co-operating one with another.

  *    *    *    *    *    *    *    *    *

"22. In account-recording appliances, the combination, with a plurality of pivoted bill-holders, of a plurality of bill-clamps mounted on the holders, tab-holders attached to the bill-clamps, and index-tabs attached to the tab-holders."

Claim 12 calls for, in combination, account-recording appliances, including:

(1) Bill-holder frame.

(2) Bill-holders mounted on the frame, and having pairs of apertures therein.

(3) Bill-clamps mounted oppositely on both sides of the bill-holders and having members extending through the apertures to opposite sides thereof; the bill-clamps on both sides of the bill-holders extending from the apertures in the same direction.

Claim 13 calls for, in combination, account-recording appliances, including:

(1) Pivoted bill-holders.

(2) Bill-clamps mounted on the bill-holders.

(3) Tab-holders attached to the bill-clamps near the free ends thereof.

(4) Index-tabs mounted on the tab-holders.

Claim 15 calls for, in combination, account-recording appliances, including:

(1) A bill-holder frame.

(2) Bill-holders mounted on the frame and having pairs of apertures therein.

(3) Bill-clamps mounted oppositely on both sides of the bill-holders and having members extending through the apertures to opposite sides thereof.

(4) Rubbing-strips on the bill-holders in pairs on opposing holders and co-operating one with another.

Claim 22 calls for, in account recording appliances:

(1) In combination with a plurality of *pivoted bill-holders*,

(2) A plurality of bill-clamps mounted on the holders, and

(3) Tab-holders attached to the bill-clamps, and

(4) Index-tabs attached to the tab-holders.

I agree that, to infringe, the defendant must use substantially one or more of these devices as described in the patent and that the range of equivalents is very limited. It cannot be said, in view of the prior art, that such a combination is new, except in a very limited sense, and in, we may say, minor matters.

As to claim 12, defendant insists that its device does not have any bill-holder frame, or anything in the place of it which answers to the bill-holder frame, of the patent in suit, and that therefore there is no infringement. In defendant's device the bills are held in a booklike form, and the leaves are connected to the back in the same manner that leaves in an ordinary book are held. In a sense the bill-holders are mounted on this back, as they are attached to it and held by it. Defendant's bill-holders are hinged or pivoted to the back of this booklike structure.

It is true that in the patent in suit, which calls for a bill-holder frame in claim 12, the frame is of special construction. I do not think the defendant's device has a bill-holder frame which, in view of the prior art, answers to the bill-holder frame of the patent in suit, or one which can be regarded as an allowable equivalent therefor. The patent says of the bill-holder frame:

"The bill-holder frame comprises a base H and two similarly formed upright ends, as I, attached to the base, the frame being removably seated in the case on the bottom thereof behind the ledge G and bearing against the back k. The frame ends are provided with metal cap plates J J, having each a number of arched caps J' formed integrally therewith, so that bearings l are provided, in which coiled springs K are seated. The frame ends are provided at their inner sides with locking pins m, and the springs have arms engaging the pins, the opposite ends of the springs having arms p having bends q and adapted when not in use to lie upon the caps J'. The back k is provided with a catch r, that is engaged by a latch s, that is connected to the base H by a pivot t, the latch having an upturned finger piece u. The frame also includes a pair of bearing plates L L', attached to the outer sides of the frame ends, the plates having slots v in the upper edges thereof forming bearings for the bill-holder pivots. The bill-holder frame is provided with a yoke comprising a pair of arms M and M', that are connected to the lower portions

of the frame ends at the outer sides thereof, by pivots $z$, the arms having at the free ends thereof an integral crossbar $N$, which is provided with a down-turned hook $w$."

Nothing like this is found in defendant's structure. The patent in suit is not a pioneer. I am of the opinion that defendant's structure does not infringe claim 12.

As to claim 13 there is quite a wide and a marked difference between the patent in suit and defendant's alleged infringing device. The patent calls for pivoted bill-holders. These defendant has. The claim then calls for bill-clamps mounted on the bill-holders, and tab-holders attached to these clamps and "near the free ends thereof"; also for index-tabs mounted on the tab-holders. These are essential and necessary elements in the combination. The defendant insists that its structure does not have either tab-holders or index-tabs, inasmuch as he uses a metal plate attached to the bill-clamp and which is not near the free end thereof, but near the middle thereof, and that on this metal plate letters or numbers are either printed or painted. Claim 13 calls for tab-holders attached to the bill-clamps, and the defendant has this metal plate, which is attached to the bill-clamp, but not near the free end thereof, as the patent says it must be. The patent then calls for index-tabs mounted on the tab-holders.

[2] Assuming that these metal plates are tab-holders, can we say that claim 13 is infringed when the defendant, instead of mounting index-tabs on the tab-holders, these metal plates, simply prints or paints letters or numbers thereon. The numbers or letters are painted on the plates or tab-holders, if we assume that the metal plates are tab-holders, and such index-tabs, letters, or numbers form an integral part of the tab-holders. In point of fact we have a tab-holder (metal plate) and no removable tabs at all, but letters, figures, or numbers painted on the plate. This may be the equivalent in utility of separate index-tabs mounted on the tab-holders. But is the paint or print of a number or a letter on a metal plate, which is a tab-holder, mounting an index-tab on the tab-holder? Does not the patent contemplate that the tab-holder is a separate and distinct thing, independent of the index-tab, but that in the combination the index-tab is to be attached to, in some manner, the tab-holder, or inserted therein? I think this true, as is plainly indicated in Figs. 9, 10, and especially 14, of the patent, and the specification says:

"Each bill-clamp is provided with a tab-holder $Q$, Fig. 14, having a tab $r$, containing index numbers running in regular order, and in some cases the names of customers may be written on the tabs beside the numbers, particularly when customers carry number pass books having detachable duplicate bills or invoices that may not contain the names of the customers."

I think the index-tab of the patent in suit is a separate and distinct thing from the tab-holder, and that, if the plate spoken of is a tab-holder in the sense of the patent, there is an absence of the index-tab of the patent, and I do not think that the piece of metal attached to the bill-clamps with a number or letter painted thereon is the equivalent of a tab-holder attached to the bill-clamp near the free end thereof and of an index-tab mounted on the tab-holders. It may in a way answer the

same purpose, but it leaves out one element of the claim. With a tab-holder attached to the bill-clamp, on which may be mounted and from which may be dismounted at will index-tabs containing the figures, numbers, or names, or both, we have the power to interchange the index-tabs, remove one, and substitute another by hand, while in defendant's structure, to accomplish such a purpose, it would be necessary by scraping or in some other mode to remove the letters, numbers, or name from the plate and then repaint with others. I think such devices as defendant's for such a purpose were very old, and that he has the right to use them without infringing the patent in suit. An equivalent is something different from a substitute.

In this connection it may be said that I am unable to discern any particular difference between claim 13 and claim 22. The language differs. I discern no difference between pivoted bill-holders and a plurality of pivoted bill-holders, and no difference between bill-clamps mounted on the bill-holders and a plurality of bill-clamps mounted on the holders, and tab-holders attached to the bill-clamps and index-tabs mounted on the tab-holders, and tab-holders attached to the bill-clamps and index-tabs attached to the tab-holders. The index-tabs in claim 13 are "mounted" on the tab-holders, while in claim 22 the index-tabs are attached to the tab-holders. Claim 22 also differs from claim 13, in that in claim 13 the tab-holders are "attached" to the bill-clamps near the free ends thereof, while in claim 22 nothing is said as to the location of the tab-holders on the bill-clamps. I regard this location of the bill-clamps as entirely immaterial. However, if "attached" in claim 22 means something different from "mounted" in claim 13, we may assume that the metal plate referred to is a tab-holder, and that painted or printed letters or numbers on the metal plate is attaching an index-tab to such tab-holder. It strikes me that this is a strained and an unnatural construction, and not warranted, and that infringement of claim 22 by defendant cannot be built up on such a theory. I find nothing in the specification that would warrant such a construction.

We have in the patent in suit several thin metal plates, or bill-holders, with apertures therein for holding bill-clamps, which in turn hold the bills, and these clamps are on both sides of the bill-holders, utilizing the same apertures in complainant's device for both. In complainant's device these bill-clamps have *tab-holders* mounted thereon or attached thereto and index-tabs mounted on the holders. Between the bill-holders and attached thereto we have rubbing-strips to prevent the bills and bill-clamps on one holder from coming in contact with those on the adjoining one. Those rubber strips are an old and a simple device for such a purpose. In combination, the advance on the prior art has, I think, and as said before, patentable novelty; but the range of allowable equivalents, in view of the prior art, is so limited, and the claims, in view of the specification, are so narrow, I am unable to find infringement. The metal plates or bill-holders in both complainant's and defendant's structures are pivoted in a way, but not in the same way, to a back. In the one case we have a frame back, with other parts particularly described; and in defendant's a back simply, to which the metal sheets or bill-holders are attached. I think it very

clear, in view of the language of complainant's patent and the prior art, that defendant does not have a frame on which the bill-holders are mounted; that is, a frame in the sense of the patent in suit. It must be kept in mind that this frame is not the case in which the whole structure in question is inclosed.

On the whole, I am unable to find infringement of either of the claims in issue. There will be a decree dismissing the bill, with costs.